OPINION OF THE COURT
 

 Ciparick, J.
 

 The parties entered into a letter agreement setting forth certain conditions precedent to the formation and existence of a sublease between them. The agreement provided that there would be no sublease between the parties "unless and until” plaintiff delivered to defendant the prime landlord’s written consent to certain "tenant work” on or before a specified deadline. If this condition did not occur, the sublease was to be deemed "null and void.” Plaintiff provided only oral notice on the specified date. The issue presented is whether the doctrine of substantial performance applies to the facts of this case. We conclude it does not for the reasons that follow.
 

 I.
 

 In 1986, plaintiff Oppenheimer & Co. moved to the World Financial Center in Manhattan, a building constructed by Olympia & York Company (O & Y). At the time of its move, plaintiff had three years remaining on its existing lease for the 33rd floor of the building known as One New York Plaza. As an incentive to induce plaintiff’s move, O & Y agreed to make the rental payments due under plaintiff’s rental agreement in the event plaintiff was unable to sublease its prior space in One New York Plaza.
 

 In December 1986, the parties to this action entered into a
 
 *688
 
 conditional letter agreement to sublease the 33rd floor. Defendant already leased space on the 29th floor of One New York Plaza and was seeking to expand its operations. The proposed sublease between the parties was attached to the letter agreement. The letter agreement provided that the proposed sublease would be executed only upon the satisfaction of certain conditions. Pursuant to paragraph 1 (a) of the agreement, plaintiff was required to obtain "the Prime Landlord’s written notice of confirmation, substantially to the effect that [defendant] is a subtenant of the Premises reasonably acceptable to Prime Landlord.” If such written notice of confirmation were not obtained "on or before December 30, 1986, then this letter agreement and the Sublease * * * shall be deemed null and void and of no further force and effect and neither party shall have any rights against nor obligations to the other.”
 

 Assuming satisfaction of the condition set forth in paragraph 1 (a), defendant was required to submit to plaintiff, on or before January 2, 1987, its plans for "tenant work” involving construction of a telephone communication linkage system between the 29th and 33rd floors. Paragraph 4 (c) of the letter agreement then obligated plaintiff to obtain the prime landlord’s "written consent” to the proposed "tenant work” and deliver such consent to defendant on or before January 30, 1987. Furthermore, if defendant had not received the prime landlord’s written consent by the agreed date, both the agreement and the sublease were to be deemed "null and void and of no further force and effect,” and neither party was to have "any rights against nor obligations to the other.” Paragraph 4 (d) additionally provided that, notwithstanding satisfaction of the condition set forth in paragraph 1 (a), the parties "agree not to execute and exchange the Sublease unless and until * * * the conditions set forth in paragraph (c) above are timely satisfied.”
 

 The parties extended the letter agreement’s deadlines in writing and plaintiff timely satisfied the first condition set forth in paragraph 1 (a) pursuant to the modified deadline. However, plaintiff never delivered the prime landlord’s written consent to the proposed tenant work on or before the modified final deadline of February 25, 1987. Rather, plaintiff’s attorney telephoned defendant’s attorney on February 25 and informed defendant that the prime landlord’s consent had been secured. On February 26, defendant, through its attorney, informed plaintiff’s attorney that the letter agreement and sublease were invalid for failure to timely deliver the
 
 *689
 
 prime landlord’s written consent and that it would not agree to an extension of the deadline. The document embodying the prime landlord’s written consent was eventually received by plaintiff on March 20, 1987, 23 days after expiration of paragraph 4 (c)’s modified final deadline.
 

 Plaintiff commenced this action for breach of contract, asserting that defendant waived and/or was estopped by virtue of its conduct
 
 [1]
 
 from insisting on physical delivery of the prime landlord’s written consent by the February 25 deadline. Plaintiff further alleged in its complaint that it had substantially performed the conditions set forth in the letter agreement.
 

 At the outset of trial, the court issued an order
 
 in limine
 
 barring any reference to substantial performance of the terms of the letter agreement. Nonetheless, during the course of trial, the court permitted the jury to consider the theory of substantial performance, and additionally charged the jury concerning substantial performance. Special interrogatories were submitted. The jury found that defendant had properly complied with the terms of the letter agreement, and answered in the negative the questions whether defendant failed to perform its obligations under the letter agreement concerning submission of plans for tenant work, whether defendant by its conduct waived the February 25 deadline for delivery by plaintiff of the landlord’s written consent to tenant work, and whether defendant by its conduct was equitably estopped from requiring plaintiff’s strict adherence to the February 25 deadline. Nonetheless, the jury answered in the affirmative the question, "Did plaintiff substantially perform the conditions set forth in the Letter Agreement?,” and awarded plaintiff damages of $1.2 million.
 

 Defendant moved for judgment notwithstanding the verdict. Supreme Court granted the motion, ruling as a matter of law that "the doctrine of substantial performance has no application to this dispute, where the Letter Agreement is free of all ambiguity in setting the deadline that plaintiff concededly did not honor.” The Appellate Division reversed the judgment on the law and facts, and reinstated the jury verdict. The Court concluded that the question of substantial compliance was
 
 *690
 
 properly submitted to the jury and that the verdict should be reinstated because plaintiffs failure to deliver the prime landlord’s written consent was inconsequential.
 

 This Court granted defendant’s motion for leave to appeal and we now reverse.
 

 II.
 

 Defendant argues that no sublease or contractual relationship. ever arose here because plaintiff failed to satisfy the condition set forth in paragraph 4 (c) of the letter agreement. Defendant contends that the doctrine of substantial performance is not applicable to excuse plaintiffs failure to deliver the prime landlord’s written consent to defendant on or before the date specified in the letter agreement and that the Appellate Division erred in holding to the contrary. Before addressing defendant’s arguments and the decision of the court below, an understanding of certain relevant principles is helpful.
 

 A condition precedent is "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises” (Calamari and Perillo, Contracts § 11-2, at 438 [3d ed];
 
 see,
 
 Restatement [Second] of Contracts § 224;
 
 see also, Merritt Hill Vineyards
 
 v
 
 Windy Hgts. Vineyard,
 
 61 NY2d 106, 112-113). Most conditions precedent describe acts or events which must occur before a party is obliged to perform a promise made pursuant to an existing contract, a situation to be distinguished conceptually from a condition precedent to the formation or existence of the contract itself
 
 (see, M.K. Metals v Container Recovery Corp.,
 
 645 F2d 583). In the latter situation, no contract arises "unless and until the condition occurs” (Calamari and Perillo, Contracts § 11-5, at 440 [3d ed]).
 

 Conditions can be express or implied. Express conditions are those agreed to and imposed by the parties themselves. Implied or constructive conditions are those "imposed by law to do justice” (Calamari and Perillo, Contracts § 11-8, at 444 [3d ed]). Express conditions must be literally performed, whereas constructive conditions, which ordinarily arise from language of promise, are subject to the precept that substantial compliance is sufficient. The importance of the distinction has been explained by Professor Williston:
 

 "Since an express condition * * * depends for its validity on the manifested intention of the parties,
 
 *691
 
 it has the same sanctity as the promise itself. Though the court may regret the harshness of such a condition, as it may regret the harshness of a promise, it must, nevertheless, generally enforce the will of the parties unless to do so will violate public policy. Where, however, the law itself has imposed the condition, in absence of or irrespective of the manifested intention of the parties, it can deal with its creation as it pleases, shaping the boundaries of the constructive condition in such a way as to do justice and avoid hardship”. (5 Williston, Contracts § 669, at 154 [3d ed].)
 

 In determining whether a particular agreement makes an event a condition courts will interpret doubtful language as embodying a promise or constructive condition rather than an express condition. This interpretive preference is especially strong when a finding of express condition would increase the risk of forfeiture by the obligee
 
 (see,
 
 Restatement [Second] of Contracts § 227 [1]).
 

 Interpretation as a means of reducing the risk of forfeiture cannot be employed if "the occurrence of the event as a condition is expressed in unmistakable language” (Restatement [Second] of Contracts § 229, comment
 
 a,
 
 at 185;
 
 see,
 
 § 227, comment
 
 b
 
 [where language is clear, "(t)he policy favoring freedom of contract requires that, within broad limits, the agreement of the parties should be honored even though forfeiture results”]). Nonetheless, the nonoccurrence of the condition may yet be excused by waiver, breach or forfeiture. The Restatement posits that "[t]o the extent that the nonoccurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange” (Restatement [Second] of Contracts § 229).
 

 Turning to the case at bar, it is undisputed that the critical language of paragraph 4 (c) of the letter agreement unambiguously establishes an express condition precedent rather than a promise, as the parties employed the unmistakable language of condition ("if,” "unless and until”). There is no doubt of the parties’ intent and no occasion for interpreting the terms of the letter agreement other than as written.
 

 Furthermore, plaintiff has never argued, and does not now contend, that the nonoccurrence of the condition set forth in
 
 *692
 
 paragraph
 
 4
 
 (c) should be excused on the ground of forfeiture.
 
 [2]
 
 Rather, plaintiffs primary argument from the inception of this litigation has been that defendant waived or was equitably estopped from invoking paragraph 4 (c). Plaintiff argued secondarily that it substantially complied with the express condition of delivery of written notice on or before February 25th in that it gave defendant oral notice of consent on the 25th.
 

 Contrary to the decision of the Court below, we perceive no justifiable basis for applying the doctrine of substantial performance to the facts of this case. The flexible concept of substantial compliance "stands in sharp contrast to the requirement of strict compliance that protects a party that has taken the precaution of making its duty expressly conditional” (2 Farnsworth, Contracts § 8.12, at 415 [2d ed 1990]). If the parties "have made an event a condition of their agreement, there is no mitigating standard of materiality or substantiality applicable to the non-occurrence of that event” (Restatement [Second] of Contracts § 237, comment
 
 d,
 
 at 220). Substantial performance in this context is not sufficient, "and if relief is to be had under the contract, it must be through excuse of the non-occurrence of the condition to avoid forfeiture”
 
 (id.; see, Brown-Marx Assocs. v Emigrant Sav. Bank,
 
 703 F2d 1361, 1367-1368 [11th Cir];
 
 see also,
 
 Childres,
 
 Conditions in the Law of Contracts,
 
 45 NYU L Rev 33, 35).
 

 Here, it is undisputed that plaintiff has not suffered a forfeiture or conferred a benefit upon defendant. Plaintiff alludes to a $1 million licensing fee it allegedly paid to the prime landlord for the purpose of securing the latter’s consent to the subleasing of the premises. At no point, however, does plaintiff claim that this sum was forfeited or that it was expended for the purpose of accomplishing the sublease with defendant. It is further undisputed that O & Y, as an inducement to effect plaintiff’s move to the World Financial Center, promised to indemnify plaintiff for damages resulting from failure to sublease the 33rd floor of One New York Plaza. Consequently, because the critical concern of forfeiture or unjust enrichment is simply not present in this case, we are not presented with an occasion to consider whether the doc
 
 *693
 
 trine of substantial performance is applicable, that is, whether the courts should intervene to excuse the nonoccurrence of a condition precedent to the formation of a contract.
 

 The essence of the Appellate Division’s holding is that the substantial performance doctrine is universally applicable to all categories of breach of contract, including the nonoccurrence of an express condition precedent. However, as discussed, substantial performance is ordinarily not applicable to excuse the nonoccurrence of an express condition precedent.
 

 Our precedents are consistent with this general principle. In
 
 Maxton Bldrs. v Lo Galbo
 
 (68 NY2d 373) the defendants contracted on August 3 to buy a house, but included in the contract the condition that if real estate taxes were found to be above $3,500 they would have the right to cancel the contract upon written notice to the seller within three days. On August 4 the defendants learned that real estate taxes would indeed exceed $3,500. The buyers’ attorney called the seller’s attorney and notified him that the defendants were exercising their option to cancel. A certified letter was sent notifying the seller’s attorney of that decision on August 5 but was not received by the seller’s attorney until August 9. We held the cancellation ineffective and rejected defendants’ argument that reasonable notice was all that was required, stating: "It is settled * * * that when a contract requires that written notice be given within a specified time, the notice is ineffective unless the writing is actually received within the time prescribed”
 
 (id.,
 
 at 378). We so held despite the fact that timely oral notice was given and the contract did not provide that time was of the essence.
 

 In
 
 Jungmann & Co. v Atterbury Bros.
 
 (249 NY 119) the parties entered into a written contract for the sale of 30 tons of casein. The contract contained the following clause: "Shipment: May-June from Europe. Advice of shipment to be made by cable immediately goods are dispatched”
 
 (id.).
 
 Plaintiff shipped the first 15 tons but gave no notice to the defendant, who rejected the shipment. Plaintiff thereafter shipped the remaining 15 tons to defendant, but again failed to provide notice by cable and instead sent two letters. Defendant rejected the remaining 15 tons. This Court was not persuaded by the argument that the defendant had received notice of shipment by other means and thus suffered no harm. "Even if that be true,” we stated, "the fact remains that the plaintiff was obligated under its contract to see that defendant ob
 
 *694
 
 tained advice of shipment by cable”
 
 (id.,
 
 at 121). Plaintiffs failure to "perform[ ] all conditions precedent required of it,” and "to give notice according to the terms of the contract” barred it from recovery
 
 (id.,
 
 at 122).
 

 Plaintiffs reliance on the well-known case of
 
 Jacob & Youngs v Kent
 
 (230 NY 239) is misplaced. There, a contractor built a summer residence and the buyer refused to pay the remaining balance of the contract price on the ground that the contractor used a different type of pipe than was specified in the contract. The buyer sought to enforce the contract as written. This would have involved the demolition of large parts of the structure at great expense and loss to the seller. This Court, in an opinion by then-Judge Cardozo, ruled for the contractor on the ground that "an omission, both trivial and innocent, will sometimes be atoned for by allowance of the resulting damage, and will not always be the breach of a condition to be followed by a forfeiture” (230 NY, at 241). But Judge Cardozo was careful to note that the situation would be different in the case of an express condition:
 

 "This is not to say that the parties are not free by apt and certain words to effectuate a purpose that performance of every term shall be a condition of recovery. That question is not here. This is merely to say that the law will be slow to impute the purpose, in the silence of the parties, where the significance of the default is grievously out of proportion to the oppression of the forfeiture”
 
 (id.,
 
 at 243-244).
 

 The quoted language contradicts the Appellate Division’s proposition that the substantial performance doctrine applies universally, including when the language of the agreement leaves no doubt that an express condition precedent was intended
 
 (see,
 
 205 AD2d, at 414). More importantly,
 
 Jacob & Youngs
 
 lacks determinative significance here on the additional ground that plaintiff conferred no benefit upon defendant. The avoidance-of-forfeiture rationale which engendered the rule of
 
 Jacob & Youngs
 
 is simply not present here, and the case therefore "should not be extended by analogy where the reason for the rule fails”
 
 (Van Iderstine Co. v Barnet Leather Co.,
 
 242 NY 425, 434).
 

 The lease renewal and insurance cases relied upon by plaintiff are clearly distinguishable and explicable on the basis of the risk of forfeiture existing therein. For example, in
 
 Sy
 
 
 *695
 

 Jack Realty Co. v Pergament Syosset Corp.
 
 (27 NY2d 449, 452), this Court gave effect to a late notice of lease renewal. Importantly, while we reaffirmed the general rule "that notice, when required to be 'given’ by a certain date, is insufficient and ineffectual if not received within the time specified,” we held that the prior courts properly invoked the rule that equity "relieves against * * * forfeitures of valuable lease terms when default in notice has not prejudiced the landlord”
 
 (id,.,
 
 quoting
 
 Jones v Gianferante,
 
 305 NY 135, 138;
 
 see also, J. N. A. Realty Corp. v Cross Bay Chelsea,
 
 42 NY2d 392, 397 ["when a tenant in possession under an existing lease has neglected to * * * renew, he might suffer a forfeiture if he has made valuable improvements on the property”]). We stated: "Since a long-standing location for a retail business is an important part of the good will of that enterprise, the tenant stands to lose a substantial and valuable asset”
 
 (id.,
 
 22 NY2d, at 453).
 

 III.
 

 In sum, the letter agreement provides in the clearest language that the parties did not intend to form a contract "unless and until” defendant received written notice of the prime landlord’s consent on or before February 25, 1987. Defendant would lease the 33rd floor from plaintiff only on the condition that the landlord consent in writing to a telephone communication linkage system between the 29th and 33rd floors and to defendant’s plans for construction effectuating that linkage. This matter was sufficiently important to defendant that it would not enter into the sublease "unless and until” the condition was satisfied. Inasmuch as we are not dealing here with a situation where plaintiff stands to suffer some forfeiture or undue hardship, we perceive no justification for engaging in a "materiality-of-the-nonoccurrence” analysis. To do so would simply frustrate the clearly expressed intention of the parties. Freedom of contract prevails in an arm’s length transaction between sophisticated parties such as these, and in the absence of countervailing public policy concerns there is no reason to relieve them of the consequences of their bargain. If they are dissatisfied with the consequences of their agreement, "the time to say so [was] at the bargaining table”
 
 (Maxton, supra,
 
 at 382).
 

 Finally, the issue of substantial performance was not for the jury to resolve in this case. A determination whether
 
 *696
 
 there has been substantial performance is to be answered, "if the inferences are certain, by the judges of the law”
 
 (Jacob & Youngs v Kent,
 
 230 NY 239, 243,
 
 supra).
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the complaint dismissed.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Levine concur.
 

 Order reversed, etc.
 

 [1]
 

 . Plaintiff argued that it could have met the deadline, but failed to do so only because defendant, acting in bad faith, induced plaintiff into delaying delivery of the landlord’s consent. Plaintiff asserted that the parties had previously extended the agreement’s deadlines as a matter of course.
 

 [2]
 

 . The Restatement defines the term "forfeiture” as "the denial of compensation that results when the obligee loses [its] right to the agreed exchange after [it] has relied substantially, as by preparation or performance on the expectation of that exchange” (§ 229, comment
 
 b).