**Howard T. MOWERS, Plaintiff,**

v.

**The PAUL REVERE LIFE INSURANCE COMPANY, Defendant.**

**No. 98–CV–86.**

United States District Court,
N.D. New York.

Nov. 25, 1998.

John P. Speer, Little Falls, NY, for Plaintiff.

Kernan & Kernan, Utica, NY (Matthew E. Hamlin, of counsel), for Defendant.

### MEMORANDUM–DECISION AND ORDER

HURD, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff, Howard Mowers ("Mowers" or "plaintiff"), originally commenced this action in state court alleging causes of action for breach of an insurance contract, tortious breach of duty of good faith and fair dealing, and fraud. Defendant, Paul Revere Life Insurance Company ("Paul Revere" or "defendant") removed the action to federal court and now moves for summary judgment dismissing plaintiff's complaint in its entirety, pursuant to Rules 56(b) and 12(b)(6) of the Federal Rules of Civil Procedure. In the alternative, defendant seeks to have a state court preliminary injunction declared void. Plaintiff has cross-moved for summary judgment on the breach of contract claim. Oral argument was heard on October 1, 1998 in Utica, New York. Decision was reserved.

### II. FACTS

Plaintiff was a self-employed chiropractor and purchased a disability insurance policy from Paul Revere beginning in July 1989 which provided coverage in the event that plaintiff became totally disabled from his work. The pertinent contract provision states: "Total disability means that because of injury or sickness: a. You are unable to perform the important duties of Your Occupation; and b. You are under the regular and personal care of a Physician." (McKiernan Aff.Ex. A.) In August 1992, Mowers injured his lower back at work and was forced to reduce his work hours. until, eventually, he ceased working entirely.

Plaintiff began receiving disability payments from defendant in November 1992 in the amount of $3760.00 per month. In the fall of 1993, Paul Revere stopped paying benefits to Mowers, requiring further confirmation of his injuries. At the request of Paul Revere, Mowers submitted to five Independent Medical Exams ("IME") by physicians of the defendant's choosing between 1993 and 1994. Three of the five explicitly confirmed that he remained totally disabled from his work as a chiropractor. The other two examinations confirmed that plaintiff cannot lift patients. Plaintiff was also under the continuous care of Dr. Gary Witchley. Upon confirmation of Mowers' continued disability, Paul Revere resumed paying benefits to plaintiff.

In February 1997, plaintiff submitted to a requested sixth IME, performed by Dr. Warren Rinehart. Dr. Rinehart indicated in his report that plaintiff might be able to resume part-time work, limiting his practice to conducting IMEs and working only with patients with problems in their cervical vertebrae. After Dr. Rinehart's report, the defendant made arrangements for two functional capacity evaluations ("FCE") for July 28, 1997 and September 3, 1997 to determine the extent of plaintiff's disability. Plaintiff did not attend either evaluation (the second one was scheduled after plaintiff was unable to attend the first one). Effective September 1, 1997, defendant stopped paying plaintiff benefits based upon Dr. Rinehart's opinion that plain-

tiff retained the ability to engage in some aspects of chiropractics.

Mowers filed suit in the Supreme Court of the State of New York, County of Herkimer. He brought an order to show cause for a preliminary injunction requiring Paul Revere to continue paying benefits during the pendency of the lawsuit. Acting Supreme Court Justice Patrick Kirk heard the motion on January 14, 1998. He granted the injunction by verbal order from the bench, but permitted Paul Revere to stop paying Mowers if he failed to attend a FCE within two months. The defendant removed the action to federal court pursuant to 28 U.S.C. § 1446, filing and serving a petition by mail on January 16, 1998. Judge Kirk did not sign a written order until February 6, 1998.

Thereafter, defendant scheduled a FCE three months later, on April 20, 1998, and notified plaintiff's attorney. After plaintiff failed to attend, Paul Revere never resumed disability payments. Plaintiff subsequently voluntarily submitted to a FCE on July 28, 1998, at JobReady, the same place the FCEs had previously been scheduled by defendant. The occupational therapist at JobReady concluded that plaintiff could not do his previous work as a chiropractor.

In its motion for summary judgment, Paul Revere alleges that plaintiff failed to meet a condition precedent in the insurance policy; that plaintiff submit to reasonable independent medical exams and cooperate in determining whether plaintiff is totally disabled. The contract states that defendant "can have a Physician of [its] choice examine [plaintiff] as often as reasonably required while [the] claim is continuing." (McKiernan's Aff.Ex. A.)

Defendant also seeks summary judgment on the plaintiff's fraud claim, arguing that plaintiff has failed to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). More specifically, defendant argues that (1) plaintiff has failed to plead the allegations of fraud with particularity, as required by Fed.R.Civ.P. 9(b) and (2) the Statute of Limitations has expired. Finally, as an alternative to summary judgment, defendant seeks to have the state court preliminary injunction declared void on the grounds that Judge Kirk's verbal order was ineffective and the state court was divested of jurisdiction at the time of removal.

The plaintiff has cross-moved for summary judgment on the breach of contract claim. He argues: (1) There is no dispute that defendant did not pay him benefits after September 1, 1997; (2) he has proven that he is totally disabled from his occupation; and (3) he was reasonable in not attending the FCE requested by Paul Revere after Dr. Rinehart's examination. Therefore, he claims, no issue of fact exists for a jury and he is entitled to payment of the contract benefits.

## III. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983), and pleadings of a pro se litigant must be construed liberally, *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Nance v. Kelly,* 912 F.2d 605 (2d Cir.1990).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. At that point, the nonmoving party "must set forth specific facts showing

that there is a genuine issue for trial." Fed. R.Civ.P. 56; *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348.

Moreover, material facts set forth in the movant's statement required by the local rules are deemed admitted unless controverted in the nonmovant's statement in opposition. L.R. 10(j) (current version L.R. 7.1(f)). Thus, no genuine issue exists as to facts set forth in a movant's 10(j) Statement if the nonmovant fails to put such facts into controversy by a response in opposition to the summary judgment motion. *See id.*

## B. BREACH OF CONTRACT CLAIM

As noted above, Paul Revere claims that plaintiff's breach of contract claim should be dismissed because the plaintiff failed to perform the condition precedent of submitting to physical examinations as often as reasonably requested by defendant. In particular, plaintiff failed to submit to a FCE requested by defendant after Dr. Rinehart's IME and report. Plaintiff contends that the defendant's demands were unreasonable. Plaintiff further contends that he is entitled to summary judgment on the breach of contract claim because he has shown that he is totally disabled from his occupation as a chiropractor.

### 1. *The IME Clause as a Condition Precedent*

■ A condition precedent is "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690, 660 N.E.2d 415, 418, 636 N.Y.S.2d 734, 737 (1995) (citations omitted). "Condi-

tions can be express or implied." *Id.* "Express conditions are those agreed to and imposed by the parties themselves." *Id.* Implied or constructive conditions ordinarily arise from language of promise and are "imposed by law to do justice." *Id.* Express conditions must be literally performed, whereas constructive conditions need only be substantially performed. Doubtful language will be interpreted as constructive conditions rather than express conditions. *Id.* at 691, 660 N.E.2d at 418, 636 N.Y.S.2d at 737.

■ The IME provision in the insurance contract in this case is a constructive condition. Similar to notice and proof of loss provisions, the IME provision does not expressly condition payment of benefits on submission to an IME, but merely represents a promise by the plaintiff to submit to IMEs as often as reasonably required while the claim is pending. Therefore, only substantial compliance with the condition is necessary. *See Chemical Bank v. Affiliated FM Ins. Co.*, 970 F.Supp. 306, 329 (S.D.N.Y.1997) (holding that notice and proof requirements in insurance contract are liberally construed and merely require substantial, not strict, compliance).

No case law has been found in this state addressing the issues of the reasonability of a request for an IME and substantial compliance with an IME provision in an insurance contract. However, other jurisdictions have addressed these issues. In determining the effect of IME provisions in insurance policies like the one in this case, courts have found that an IME clause is a condition precedent to the insurer's obligation to pay, or continue paying, which imposes a duty of performance on the insured. *See VanHaaren v. State Farm Mut. Auto. Ins. Co.*, 989 F.2d 1, 6 (1st Cir.1993); *Hansen v. State Farm Mut. Auto. Ins. Co.*, 936 P.2d 584, 589 (Colo.Ct.App. 1996), *rev'd on other grounds*, 957 P.2d 1380 (1998).[1] However, an insurer's right to require the insured to submit to an IME is limited by the reasonableness of the request

---

1. The court in *VanHaaren* analogized provisions requiring the insured to submit to physical examinations as often as reasonably requested by the insurer to provisions which require the insured to submit to deposition as often as reasonably requested. 989 F.2d at 5 n. 3. In both cases, the insured's obligation is not triggered automatically, but only when a reasonable request is made. *Id.*

under the circumstances. *Hudson v. Omaha Indem. Co.*, 183 Ga.App. 847, 360 S.E.2d 406, 408 (Ga.Ct.App.1987). This includes the reasonableness of the terms of the request. *Hansen,* 936 P.2d at 589. The insured must act in good faith in challenging the IME requested. *VanHaaren,* 989 F.2d at 6. Certain aspects of the IME, such as the "location, date, or time, or ... particular risks which the examination might pose to the health of the insured" can be a basis for the insured to reasonably object. *VanHaaren,* 989 F.2d at 6.

New York courts have considered provisions requiring depositions which are similar in language to the IME provision at issue here. In that context, it has been held that failure to comply with the provision without a reasonable excuse is a material breach. *Bulzomi v. New York Cent. Mut. Fire Ins. Co.,* 92 A.D.2d 878, 459 N.Y.S.2d 861, 862 (2d Dep't 1983) (citing *Dyno–Bite, Inc. v. Travelers Cos.,* 80 A.D.2d 471, 475, 439 N.Y.S.2d 558, 561 (4th Dep't 1981); *Catalogue Serv. of Westchester, Inc. v. Insurance Co. of N. Am.,* 74 A.D.2d 837, 425 N.Y.S.2d 635, 637 (2d Dep't 1980); *Pogo Holding Corp. v. New York Property Ins. Underwriting Ass'n,* 73 A.D.2d 605, 606, 422 N.Y.S.2d 123, 124 (2d Dep't 1979)). Similarly, the Second Department has held that an insured's continued failure without explanation or excuse to provide the insurer with requested information constituted a material breach of the policy and precluded recovery by the insured. *See Cabe v. Aetna Cas. & Sur. Co.,* 153 A.D.2d 653, 544 N.Y.S.2d 862 (2d Dep't 1989). These cases demonstrate that only unexcused or unexplained failure to comply with an insurer's requests constitute a breach. In addition, it should be noted that depositions differ from physical examinations in that continuous submission to physical examinations can endanger the health of the insured. The insured should be permitted a little more latitude to object to continuous requests for physical examinations, if made in good faith and for legitimate reasons.

■ The question of the reasonableness of the insurer's request is generally left to the jury, *Hudson,* 360 S.E.2d at 408; *Hansen,* 936 P.2d at 589, however, there are circumstances where it can be decided as a matter of law. *Falagian v. Leader Nat'l Ins. Co.,* 167 Ga.App. 800, 307 S.E.2d 698, 700 (Ga.Ct.App.1983) (citing *Georgia Farm Bureau Mut. Ins. Co. v. Matthews,* 149 Ga.App. 350, 254 S.E.2d 413 (Ga.Ct.App.1979)). In either case, the burden in on the insurer to demonstrate reasonableness under the circumstances. *Id.*

Plaintiff contends that the FCE defendant scheduled was not reasonable because he had already submitted to six IMEs requested by Paul Revere since the onset of his disability. In addition, plaintiff's treating physician and neurological consultant both concur that plaintiff is totally disabled from his chiropractic work. Plaintiff also contends that his physical condition made doing FCEs dangerous, and he was advised by his physician not to submit to such an examination.[2] He claims that he advised defendant of this. He also claims that he wanted his attorney to be present at the first scheduled exam, but when his attorney was unable to attend, the exam was rescheduled. Plaintiff alleges he could not attend the second scheduled exam because of illness. He claims he attempted to reschedule the exam, but the defendant refused. However, before determining whether the defendant's FCE request and plaintiff's refusal were reasonable, analyses should be conducted regarding what constitutes total disability from one's own occupation under an insurance contract, as well as the medical evidence available in this case.

### 2. *Total Disability*

"[T]otal disability in particular occupations occurs when the assured is found to be inca-

---

2. Plaintiff eventually attended a FCE on July 28, 1998 at the same location where defendant had scheduled the previous exams. However, the fact that plaintiff eventually submitted, on his own terms, to a FCE one year after defendant requested the examination is not considered here as bearing on the issue of the reasonableness of the defendant's request for a FCE, nor the reasonableness of the plaintiff's refusal to comply with such request. It should be noted, nevertheless, that the physical therapist stated in her FCE report that chiropractic treatment requires repetitive and constant bending, twisting, and lifting, all of which plaintiff cannot perform. (Pl.'s Att'ys Aff.Ex. 3.)

pacitated from performing any substantial part of his ordinary duties, notwithstanding that he can still perform some of the duties pertinent to his profession." *Niccoli v. Monarch Life Ins. Co.,* 70 Misc.2d 147, 149, 332 N.Y.S.2d 803, 806 (Sup.Ct. Kings County 1972), *aff'd,* 45 A.D.2d 737, 356 N.Y.S.2d 677 (2d Dep't 1974), *aff'd,* 36 N.Y.2d 892, 334 N.E.2d 594, 372 N.Y.S.2d 645 (1975) (citations omitted). "An insured suffers total disability when he is prevented from performing each and every duty though he may be able to perform, perhaps with peril to himself, occasional acts relating to his vocation, but not constituting a ·substantial part of any 'daily duty.'" *McGrail v. Equitable Life Assurance Soc'y of the U.S.,* 292 N.Y. 419, 426 55 ˙N.E.2d 483, 487 (1944) (citing *Fitzgerald v. Globe Ind. Co.,* 84 Cal.App. 689, 258 P. 458 (Cal.Ct.App.1927); *Harrison v. Provident Life & Accident Ins. Co.,* 167 Tenn. 394, 70 S.W.2d 24 (Tenn.1934)). The total disability clause

> contemplates such a disability as renders the insured unable to perform all the substantial and material acts necessary to the prosecution of his business or occupation in a customary and usual manner. The fact that the insured is able to perform some inconsequential, trivial, or incidental duties connected with his usual employment or occupation does not preclude recovery under a total disability provision....

*Niccoli,* 70 Misc.2d at 150, 332 N.Y.S.2d at 807 (quoting 31 N.Y.Jur. Insurance § 1372).

The following summary of the medical evidence in this case demonstrates that plaintiff has shown that he is totally disabled from his occupation. In the words of the Paul Revere insurance contract, he is "unable to perform the important duties of [his] [o]ccupation," to wit: a chiropractor.

After the first IME, Dr. Gregory Shankman wrote in his July 9, 1993 report that plaintiff had herniated discs at L4–5, L5–S1 and C6–7, and that he could not consider proceeding with employment until they had resolved, which usually takes about five years. (Pl.'s Aff.Ex. 2 at 1.) In an August 5, 1993 report following a second IME, Dr. Shankman noted that Mowers was totally disabled from his previous employment; he could not lift, carry, do manipulations or repetitive motions with the back or neck, and that engaging in any type of employment would risk quadriplegia. (*Id.* at 2.) In a third IME, Dr. Luciano Modesti completed a neurological consultation of plaintiff on October 6, 1993. He determined that Mowers could return to his occupation, but he could not lift more than twenty-five pounds and should change positions while working. (*Id.* at 6.) At a fourth IME in November 19, 1993, Dr. Richard Tesoriero diagnosed plaintiff with lumbar disc syndrome and herniated lumbar discs at L4–5 and L5–S1, cervicothoracic strain, and bilateral carpal tunnel syndrome. (*Id.* at 15.) Dr. Tesoriero concluded that Mowers was totally disabled from his usual job duties. (*Id.* at 17.) He also stated that chiropractics is a manual job which requires assuming awkward positions, helping lift patients, and an acute sense of touch. (*Id.*) Dr. Tesoriero doubted that surgery could correct plaintiff's problems with his hands. (*Id.*) On July 14, 1994 at a fifth IME, Dr. Frank Bersani, an orthopedic surgeon, concluded upon examining plaintiff that he had a marked partial disability and could not perform strenuous tasks such as manipulating backs and helping lift patients. (*Id.* at 22.) In the sixth and last IME conducted in February 1997, Dr. Warren Rinehart examined Mowers and believed that he could do part-time work as a chiropractor doing IMEs and limiting his practice to the cervical region. (Rinehart Aff.Ex. A.) Dr. Rinehart concurred that plaintiff could not do vigorous manipulations on patients, or heavy lifting. (*Id.* at 5.) Finally, he recommended a FCE to determine plaintiff's capabilities.

In addition to these IMEs, plaintiff was under the regular care of Dr. Gary Witchley. Dr. Witchley states in his affidavit that as of 1992, plaintiff was, and still is, limited in the amount of time he can stand; that he should not lift more than twenty-five pounds; and that he suffers from carpal tunnel syndrome. (Witchley Aff. ¶ 7.) Dr. Witchley states that the duties described by Dr. Rinehart that plaintiff can perform are not part of the important duties of a chiropractor. (*Id.* ¶ 10.) Dr. Witchley had informed defendant of plaintiff's condition. Dr. Witchley re-

ferred plaintiff to Dr. Reynaldo Lazaro, a neurologist. In his affidavit, Dr. Lazaro declares that it is his opinion that plaintiff is totally disabled and will never be able to resume his chiropractic practice. (Lazaro Aff. ¶ 3.) Dr. Lazaro further states that Mowers' carpal tunnel syndrome is so severe that he risks paralysis if he returns to chiropractic work. (*Id.* ¶ 7.)

The medical evidence in this case shows that plaintiff has several herniated discs, he cannot lift more than twenty-five pounds, he cannot help lift patients, and he cannot perform manipulations on patients due to carpal tunnel syndrome. Dr. Tesoriero has affirmed that these functions are important duties of a chiropractor. Furthermore, Dr. Lazaro fears that plaintiff risks paralysis if he uses his hands repetitively. Dr. Shankman asserted in his report that Mowers cannot lift, carry, or perform repetitive motions with his back or neck, and that Mowers risks quadriplegia if he engages in any type of employment. Even the reports of Dr. Rinehart and Dr. Modesti, which do not explicitly state that Mowers is totally disabled from chiropractics, admit that Mowers cannot lift patients. In addition, Dr. Rinehart admits that Mowers cannot perform vigorous manipulations on patients. Dr. Modesti does not even discuss the extent of plaintiff's carpal tunnel syndrome and the effect that it has on his ability to perform chiropractic manipulations. Clearly, the important functions of a chiropractor involve manipulating patients and helping to lift patients on and off of the treatment table. The medical evidence

shows there is no question that plaintiff cannot perform these functions. Dr. Modesti's and Dr. Rinehart's opinions that plaintiff can limit his practice and perform some other functions of his occupation do not change the fact the plaintiff cannot perform "the important duties" of his occupation. Despite six IMEs,[3] Paul Revere has failed to come forward with any evidence to raise a genuine issue of material fact that plaintiff is not totally disabled as defined under the terms of its insurance contract.

### 3. *The FCE Request*

■ The defendant has not met its burden that requesting a FCE was reasonable in light of the medical evidence available. Paul Revere made the FCE request based upon Dr. Rinehart's IME and report dated February 17, 1997. However, as noted above, a close reading of Dr. Rinehart's report shows that he did, in fact, find that Mowers could not perform many of the important duties of a chiropractor.[4] In fact, even in his affidavit of April 9, 1998, over one year later, and in support of defendant's motion, Dr. Rinehart still refuses to state unequivocally that Mowers can perform "*the* important duties" (emphasis) of a chiropractor as total disability is defined in the insurance contract.[5] Despite using some very disingenuous language (i.e. "part-time work," "limiting his practice", "smaller forces"), what Dr. Rinehart is really saying in his report and affidavit is that plaintiff can perform *some*, but not *all* of the important duties of a chiropractor. Under such circumstances, according to the insur-

3. Three of the IMEs explicitly found that Mowers is totally disabled, and the other three all found that he is incapable of performing some of the important duties of a chiropractor.

4. In his report, he states:
 As it relates to his profession as a chiropractor, it would appear that the patient would be able to do at least part-time work as a chiropractor doing examinations including IME work, and limiting his practice to techniques using smaller forces and dealing primarily with the cervical spine and not the low back may be possible. Based on his subjective symptoms, I agree that he is unable to do heavy lifting or vigorous manipulation of patients.
 (*See* Rinehart Aff.Ex. A.)

5. In his affidavit, Dr. Rinehart states: "Mowers can still engage *in* important duties of his profes-

sion as a chiropractor by performing techniques using the application of smaller forces, such as, dealing primarily with the cervical spine and performing consulting work by doing independent medical examinations." (Rinehart Aff. ¶ 5) (emphasis added). However, the insurance contract provides that someone is totally disabled if they are "unable to perform *the* important duties of Your Occupation." (McKiernan Aff.Ex. A) (emphasis added). The distinction between *in* and *the* is important. For example, if there are ten important duties of an occupation, and a person can perform five of those duties, it could not be said that he could perform *the* important duties of the job. However, it could be said that he could engage *in* important duties (five) of the job.

ance contract, Mowers is totally disabled. *See Westchester Resco Co. v. New England Reinsurance Corp.*, 818 F.2d 2, 3 (2d Cir. 1987) (stating that ambiguities in standard-form contracts supplied by one party are generally construed against that party); *United States Fidelity & Guar. Co. v. Annunziata*, 67 N.Y.2d 229, 232, 492 N.E.2d 1206, 1207, 501 N.Y.S.2d 790, 791 (1986) (stating that insurance contracts are liberally construed in favor of the insured).[6] This being the case, Paul Revere had no reason to require plaintiff to submit to a FCE, given that it knew that plaintiff is totally disabled in that he cannot perform the important duties of his profession.

The purpose of an IME is to enable the insurer to determine whether an insured is entitled to benefits under the insurance contract. In this case, it was determined that Mowers is totally disabled under the terms of Paul Revere's contract. Once Dr. Rinehart made that determination, that should be the end of the inquiry as far as Mowers' entitlement to benefits is concerned. Paul Revere may be interested in quantifying the extent of plaintiff's total disability, but that does not give it the right to demand further testing. Mowers might be willing to voluntarily submit to further tests, such as a FCE, but his refusal or failure to do so cannot be used as grounds to deny him benefits.

Dr. Rinehart recommended a FCE to obtain an objective evaluation of the plaintiff's abilities. Merely desiring to determine the extent of plaintiff's total disability (as opposed to whether or not plaintiff is totally disabled) is not a reasonable basis for requiring a FCE. Since defendant's request was unreasonable under the circumstances, the issue of whether the plaintiff's refusal to submit to an FCE was reasonable need not be addressed. Plaintiff was not required to comply with an unreasonable request. Therefore, plaintiff is entitled to summary judgment on the breach of contract claim.

## C. BREACH OF GOOD FAITH AND FAIR DEALING CLAIM

Plaintiff's second cause of action alleges tortious breach of the implied duty of good faith and fair dealing. "Under New York law, parties to an express contract are bound by an implied duty of good faith, 'but breach of that duty is merely a breach of the underlying contract.'" *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir.1992) (quoting *Geler v. National Westminster Bank USA*, 770 F.Supp. 210, 215 (S.D.N.Y.1991)). Thus, there is no separate cause of action for breach of good faith and fair dealing, it is included in the breach of contract claim. Plaintiff's second cause of action must be dismissed as redundant.

## D. FRAUD CLAIM

An action based upon fraud must be commenced within six years from the time the plaintiff discovered the fraud or could with reasonable diligence have discovered it. N.Y.C.P.L.R. § 213 (McKinney 1990). Paul Revere claims that plaintiff's claim is time-barred because the alleged misrepresentation by its agents was made around July 1989 and plaintiff did not file suit until December 22, 1997. However, plaintiff could not have reasonably discovered the alleged fraud until August 1997, when the defendant stopped making payments to plaintiff alleging that plaintiff was not totally disabled. Therefore, the fraud claim is not time-barred.

Fed.R.Civ.P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Id.* The stringent requirements of Rule 9(b) are an exception to the general notice pleading approach of the federal rules. See Fed.R.Civ.P. 8(e). Some of the rationales for Rule 9(b) are to

assure that a defendant accused of fraudulent conduct is given particularized information to facilitate an adequate defense to the charges, to prevent damage to defendant's reputation resulting from an unjustified claim of fraud, and to avoid the in

---

**6.** A reasonable interpretation of the definition in the Paul Revere insurance contract is that an insured is totally disabled unless he/she can perform all of the important duties of his/her occupation. *See supra* pp. 140–41.

terrorem force of claims brought for the sole purpose of increasing the settlement value of a lawsuit.

*Avnet, Inc. v. American Motorists Insurance Co.,* 115 F.R.D. 588, 590–91 (S.D.N.Y.1987) (citing *Crystal v. Foy,* 562 F.Supp. 422, 424 (S.D.N.Y.1983); *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir.1982); *Denny v. Barber,* 576 F.2d 465, 468–69 (2d Cir.1978); *Segal v. Gordon,* 467 F.2d 602, 606–07 (2d Cir.1972)). To satisfy Rule 9(b), the complaint must detail the time and place at which the statements were made, identify the speaker charged with making the statements and what he obtained thereby, and give the content of the alleged misrepresentations. *See Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986); *Goldman v. Belden,* 754 F.2d 1059, 1069 (2d Cir.1985). Conclusory allegations to the effect that defendant's conduct was fraudulent is insufficient. *Denny,* 576 F.2d at 469. Allegations of fraud cannot ordinarily be based "upon information and belief" unless the matter is exclusively within the defendant's knowledge. *Luce,* 802 F.2d at 54, n. 1. Allegations must also be accompanied by a statement of facts upon which the belief is founded. *Id.*

█ It is important to note that the particularity requirement of Rule 9(b) must be read in conjunction with Rule 8 which governs general pleading principles.[7] Thus, while absolute particularity is not required, the short and concise statements must provide enough detail to give adequate notice to the adverse party and enable preparation of a response. *See Goldman,* 754 F.2d at 1070; *Felton v. Walston & Co.,* 508 F.2d 577, 581 (2d Cir.1974).

The plaintiff's complaint alleges that around July 1, 1989, agents of the defendant in its Herkimer office advised the plaintiff that the defendant would pay disability benefits to him if he became totally disabled from his own occupation, as stated in the policy. The plaintiff also alleges that these statements were false, and known to be false by defendant, because its agents knew that the defendant had terminated payments in the

past under the pretext that the insured was not totally disabled, and that the statements were made by the agents to induce plaintiff to purchase defendant's disability policy. Finally, plaintiff alleges that he relied on the agent's misrepresentations to his detriment by purchasing the policy and paying the monthly premiums. The allegations in the complaint provide sufficient detail as to time, place, speaker, and content to inform the defendant of the allegations and enable it to prepare a response.

█ Moving to the merits of the fraud claim, although the defendant did not specifically argue for dismissal on the merits, it did move for dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). Dismissal under 12(b)(6) "is proper where the plaintiff cannot recover on the facts he has alleged." *See Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). While the fraud claim is sufficient for pleading purposes, there is no merit to the claim. Mowers has not come forward with any facts to establish that he was defrauded in July 1989. The fact that Paul Revere paid him benefits beginning when he first became totally disabled in November 1992, and after subsequent confirmation of his continued total disability until September 1997, belies the claim of fraud. In addition, "a cause of action for fraud cannot exist when the fraud claim arises out of the same facts as a breach of contract claim with the sole additional allegation that the defendant never intended to fulfill its express contractual obligations." *PI, Inc. v. Quality Prods., Inc.,* 907 F.Supp. 752, 761 (S.D.N.Y.1995). This is precisely the situation here. Plaintiff's fraud claim arises out of the same circumstances as the breach of contract claim. Plaintiff merely adds that defendant never intended to pay plaintiff disability benefits pursuant to the insurance contract. Therefore, for the reasons stated above, the fraud claim must be dismissed on the merits.

---

**7.** Rule 8 requires a "short and plain statement" of a party's claims and defenses. Fed.R.Civ.P. 8(a), (b). It also states that each averment in a pleading shall be simple, concise, and direct. *Id.* 8(e).

## E. REMOVAL AND THE PRELIMINARY INJUNCTION

"A defendant desiring to remove ... shall file in the district court of the United States where the action is pending a notice of removal and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant in such action." 28 U.S.C. § 1446(a). Promptly after filing the notice of removal, the defendant is required to give written notice to all adverse parties and file a copy of the notice with the clerk of the state court, which shall effect removal and the state court shall proceed no further unless and until the case is remanded. § 1446(e).

 The issue presented here is: When did the state court order which granted plaintiff a preliminary injunction become effective, at the hearing or upon completion of a signed writing. The order to show cause was heard on January 14, 1998. At that time, the judge verbally granted plaintiff's motion. On January 16, 1998, the defendant filed a petition for removal with the district court, served plaintiff, and filed a copy with the state court. The written order granting plaintiff's motion for a preliminary injunction was not issued until February 6, 1998.

New York procedural law states that an order determining a motion made upon supporting papers shall be in writing; signed with the judge's signature; state the court of which he is a judge; the place and date of the signature; recite the papers used on the motion; and give the determination and direction. N.Y.C.P.L.R. § 2219 (McKinney 1991). Such formal motions should be distinguished from oral ones made at trial, which judge's make mere rulings upon, not orders. See , Siegel, Practice Commentaries, N.Y.C.P.L.R. § 2219 at 156; *Katz v. Katz*, 68 A.D.2d 536, 542, 418 N.Y.S.2d 99, 103 (2d Dep't 1979).

The case of *School of Music of Brooklyn Free Musical Society v. Moritt* seems in-structive on this issue. 135 N.Y.S.2d 43 (Sup.Ct. Kings County 1954). After the parties orally argued motions before the court, the court orally denied plaintiff's motion and granted defendant's motion. No order was submitted, signed or entered on either disposition. The court in *Moritt* stated:

It is elementary that any direction or disposition made by a court or a judge in an action ... must be made by written order and until the court's disposition is so embodied it is without effect. An oral disposition made upon argument is simply a direction and guide to the parties and their attorneys for the preparation and submission of the formal order.

*Id.* at 45; *see also Le Glaire v. New York Life Ins. Co.*, 5 A.D.2d 171, 172, 170 N.Y.S.2d 763, 764 (1st Dep't 1958) (holding that the mere oral statements denying defendant's applications at trial without any showing that they were reduced to writing, signed by the judge or entered are insufficient to constitute an appealable order).

It is undisputed that the state court was divested of jurisdiction over this case on January 16, 1998. The verbal granting of plaintiff's request for a preliminary injunction was ineffective, and the subsequent written order dated February 6, 1998 had no legal force.

### F. DAMAGES

Paul Revere stopped making disability payments as of September 1, 1997. Therefore, plaintiff is entitled to a money judgment for payments due during the fifteen months since that time, plus annual interest at nine percent.[8] At $3760.00 per month, the total due Mowers is $59,784.[9]

In addition, plaintiff is entitled to an injunction directing Paul Revere to resume monthly payments commencing on December 1, 1998.

Therefore, it is

ORDERED, that

October 1997 payment of $3760 plus interest for fourteen months, the November 1997 payment of $3760 plus interest for thirteen months, and so on through November 1998.

---

8. N.Y.C.P.L.R. § 5001 (McKinney 1992).

9. This total was calculated by taking the monthly payment of $3760 for September 1997, plus interest for fifteen months and adding to it the

1. Defendant's motion for summary judgment on the breach of contract claim is DENIED;

2. The breach of good faith and fair dealing claim is DISMISSED;

3. Defendant's motion for summary judgment on the fraud claim is GRANTED;

4. The state court preliminary injunction order is declared VOID;

5. Plaintiff's cross-motion for summary judgment on the breach of contract claim is GRANTED; and

6. The Clerk is directed to enter judgment in favor of the plaintiff and against the defendant in the sum of Fifty-nine Thousand Seven-hundred Eighty-four and No/100 Dollars ($59,784.00); directing the defendant to resume monthly disability payments to plaintiff commencing December 1, 1998; and dismissing the second and third causes of action.

IT IS SO ORDERED.