Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered January 16, 2013, which granted plaintiffs motion to dismiss defendant’s amended counterclaims pursuant to CPLR 3211 (a) (1) and (7), unanimously affirmed, with costs.
This declaratory judgment action arises out of a contract, entered into effective July 1, 2007 (the Transport Agreement), pursuant to which, among other things, plaintiff (DTV) was to distribute defendant’s (RCTV) programming, in exchange for a license to distribute RCTV’s programming in Latin America. The parties entered into the agreement after the Venezuelan government declined to renew RCTV’s license to broadcast television programs, an action alleged to have been politically motivated. This dispute arises out of DTV’s suspension and/or termination of distribution of RCTV’s signal.
The court properly dismissed RCTV’s counterclaims for, among other things, breach of contract and breach of the covenant of good faith and fair dealing, with regard to both the Transport Agreement and an agreement referred to as the Restoration Memorandum. DTV’s exercise of its discretionary right to suspend and/or terminate the broadcast of RCTV’s signal, in the face of allegations that RCTV violated Venezuelan law, was not invalidated by the failure to provide prior written notice. Section 7 (a) of the Transport Agreement provided that “[i]f,” *540 among other things, DTV determined that distribution of RCTV’s signal may violate the law or be politically inadvisable, “then, . . . immediately following written notice,” DTV could cease distributing the signal or terminate the agreement.
Given the absence of clear language indicating the parties’ unmistakable intent to make the provision of written notice a condition precedent to DTV’s exercise of its rights under section 7 (a) of the Transport Agreement, no such duty will be construed (see Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co., 86 NY2d 685, 691 [1995]; Unigard Sec. Ins. Co. v North Riv. Ins. Co., 79 NY2d 576, 581 [1992]). Indeed, the notice requirement is not preceded by the tell-tale signs of a condition precedent, such as the words “if,” “until,” and “unless” (see MHR Capital Partners LP v Presstek, Inc., 12 NY3d 640, 645 [2009]; 401 W. 14th St. Fee LLC v Mer Du Nord Noordzee, LLC, 34 AD3d 294 [1st Dept 2006]). Although the words “if” and “then” appear in the termination clause, they refer to the conditions under which DTV may terminate or suspend performance of the agreement and the consequences of the existence of such conditions. At most, the use of the words “if” and “then” is ambiguous and therefore insufficient to create a condition precedent.
The Restoration Memorandum subsequently entered into by the parties, which contemplated a resumption of services, lacks the definiteness as to material terms required in order to be a legally enforceable contract (see Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d 475, 482 [1989], cert denied 498 US 816 [1990]; Joseph Martin, Jr., Delicatessen v Schumacher, 52 NY2d 105, 109-111 [1981]). The Restoration Memorandum provides for a “per-subscriber payment from DirecTV]” but fails to identify the payment amount or provide a method to calculate that amount. The memorandum also requires DTV to “invest in advertising or . . . buy commercial advertising time,” but fails to identify an amount of advertising time to be purchased or the cost of that time. Likewise, no guidance is provided as to DTV’s obligation to “make a proposal to raise capital for, or invest in, RCTV Mundo.”
Even if the Restoration Memorandum were viewed as a modification of the Transport Agreement and found to incorporate its terms, the Restoration Memorandum would still fail for lack of definiteness. While reference to extrinsic standards or documents may, at times, supply the detail necessary to render an agreement sufficiently definite (see Cobble Hill Nursing Home, 74 NY2d at 483-484), the Transport Agreement lacks such guidance.
*541 Moreover, RCTV’s claims independently fail in the absence of any recoverable damages, as section 10 of the Transport Agreement bars recovery for incidental and consequential damages. RCTV is not entitled to recover the value of the lost advertising revenue, which loss constitutes consequential damages (see Aetna Cas. & Sur. Co. v Kidder, Peabody & Co., 246 AD2d 202, 209 [1st Dept 1998], lv denied 93 NY2d 805 [1999]). RCTV’s characterization of its damages as the loss of the “general market value of having a television channel . . . reach a [larger] viewing audience,” which could be measured by “reference” to lost advertising revenue, does not transform its consequential damages of lost revenue into a recoverable claim for the lost value of performance. Indeed, the only lost value identified by RCTV is that of access to a larger audience, a value measured by reference to unrecoverable lost profits. Further, the loss here does not involve the actual diminution in value of real property as a result of the failure to improve that property (cf. Latham Land I, LLC v TGI Friday’s, Inc., 96 AD3d 1327, 1331 [3d Dept 2012]).
Concur — Mazzarelli, J.E, Sweeny, Andrias, DeGrasse and Richter, JJ.