■ CENTURY 21, INC., Appellant, v F.W. WOOLWORTH Co., Respondent.—Order, Supreme Court, New York County (Carol E. Huff, J.), entered October 1, 1990, which, *inter alia,* granted the defendant's cross motion for summary judgment to the extent of dismissing a portion of the plaintiff's third cause of action and the entire second, fourth and fifth causes of action,

unanimously modified, on the law and the facts, to reinstate the fourth cause of action, and otherwise affirmed, without costs. Appeal from an order of the same court, entered February 5, 1991, which, *inter alia,* denied the plaintiff's motion to renew and reargue, is dismissed as academic, without costs.

The plaintiff, Century 21, Inc. ("Century"), commenced this action alleging that the defendant, F.W. Woolworth Co. ("Woolworth"), had misrepresented the amount of asbestos present at premises which Century had subleased from Woolworth and that delivery of possession with such asbestos violated agreements between the parties.

Woolworth agreed to sublease its commercial premises located at 9-17 Dey Street and 14-22 Cortlandt Street to Century in sublease and separate sublease agreements dated January 27, 1989. The parties also executed a license agreement pursuant to which Woolworth was to remain on the premises until January 31, 1990. The lease between the Overlandlord, 22 Cortlandt Realty Company, and Woolworth provided, in part, that the tenant, at its own cost and expense, "shall promptly comply with all laws, rules, regulations and orders of governmental authorities having jurisdiction with respect to the treatment, encapsulation and/or removal of any asbestos now or hereafter situate within the demised premises".

Woolworth and Century placed their agreements in escrow pending receipt of certain documentation. The escrow agreement provided that as a condition of closing, Century demands "[a] letter from Woolworth to Century addressing Woolworth's knowledge and notice of hazardous substances in or upon the demised premises under the Sublease, acceptable to Century." Woolworth delivered the letter, in accordance with the escrow agreement, on March 3, 1989. The letter provided that "to the best of its knowledge and belief, F.W. Woolworth Co. is not aware of any generation, storage, or disposal of hazardous materials (as defined by law) at the Premises, except for any such hazardous materials which may be contained in products maintained at the Premises for resale by F.W. Woolworth Co. or in commonly-used cleaning materials, and that there is no asbestos, whether or not exposed or friable, or asbestos-containing structural fireproofing material located at or used in connection with the construction and maintenance of the Premises, except as shown in (i) a report dated October 22, 1986 and entitled 'Asbestos Survey for 22 Cortlandt Street, New York, New York' prepared by Testwell Craig Laboratories of N.J. Inc. * * * and (ii) a letter dated January 27, 1989

from Landmark Facilities Group, Inc. to Mr. S. William Manteria of our Company".

The Testwell Craig report revealed the presence of asbestos containing materials in the cellar, first, second and third floors of the building. The asbestos content ranged from a few percent to approximately 30 percent. The report recommended that air samples be collected as soon as possible to determine whether the airborne asbestos fiber concentrations were below the current levels permitted by law. It was also recommended that an interim maintenance program be implemented. Testwell Craig's report further indicated that it was possible that ultimately, all of the asbestos containing materials would have to be removed by demolition, remodeling, etc. The Landmark Facilities Group found asbestos in the cellar and recommended that additional surveying be conducted "to get a better definition of the conditions."

The parties closed on the sublease on March 22, 1989. A Modification agreement dated February 17, 1989 and executed by the parties on the closing date, provided: "The Overlandlord has required the Landlord as tenant under the Overlease * * * to be responsible for all costs and expenses and for compliance with all governmental laws, rules, and ordinances governing the encapsulation or removal of asbestos in the demised premises. The Landlord and Tenant agree that the Landlord shall be solely responsible for such matters relating to asbestos at Landlord's cost and expense relating to or arising out of the removal by the Landlord of its trade fixtures and equipment and its kitchen, food service counters and related restaurant equipment as specified in Article 4 hereof. Except as aforesaid, the Tenant shall be responsible, at its cost and expense, for compliance with the provisions of Art. 53 (b) of the Overlease."

Woolworth thereafter notified Century, in November of 1989, that the premises contained more asbestos than was disclosed in the March 3, 1989 Asbestos Representation Letter. Century then hired a consultant who found widespread friable asbestos throughout the building. Although Woolworth confirmed the extensive presence of asbestos, it denied responsibility for its removal prior to delivery of occupancy on February 1, 1990. By letter dated February 7, 1990, Century informed Woolworth that since the premises had not been delivered in the condition required by the Sublease Documents, it was proceeding with all immediate speed to complete all required work "including, without limitation, engaging

contractors on an overtime basis, and removing and disposing of all asbestos containing materials at the Premises." Century further notified Woolworth that it was deducting from its payment to Woolworth "an amount equal to $5,000.00 per day for the period from February 1, 1990 through February 5, 1990 and thereafter the sum of $20,000.00 per day until the Premises are put in the condition required by the Sublease Documents plus an amount equal to other damages Century incurs by reason of [Woolworth's] failure to comply with the Sublease Documents (such as the cost of removal of the asbestos)." Century had already paid Woolworth $10 million and owed the company an additional $8,400,000. Woolworth disputed Century's contentions and, in a letter dated March 2, 1990, advised Century that if it made any deductions, appropriate action would be taken.

Century instituted this action to preliminarily enjoin Woolworth, pending the determination of an action commenced simultaneously, from 1) taking any action to terminate the sublease 2) taking any action to evict Century and 3) commencing a summary holdover or other proceeding against Century by reason of any alleged default. Century's complaint alleged five causes of action: The first sought a judgment declaring that Woolworth was obligated to remove the asbestos and that Century could deduct the cost of removal without violating the sublease and without subjecting itself to suit by Woolworth. The second cause of action sought a permanent injunction while the third sought monetary damages for Woolworth's purported breach of the Sublease Documents concerning the asbestos claim and for faulty wiring. In the fourth cause of action, Century sought monetary damages for Woolworth's representations in the Asbestos Representation Letter "concerning the absence of asbestos in the Premises." Century maintained that those representations were false, that Woolworth knew or should have known they were false, that the absence of asbestos was a fact material to Century in negotiating and entering into the Sublease Documents and that Century relied on those representations to its detriment. The final cause of action sought damages based on Century's allegation of harassment.

Woolworth cross moved for summary judgment dismissing the complaint and for an adverse declaration of the rights sought by Century. The Supreme Court granted Woolworth's cross motion for summary judgment to the extent of dismissing all of Century's claims except for the claim alleging defective wiring. Century's motion for a preliminary injunc-

tion was denied as academic. Century's motion to renew and reargue was also denied.

As limited by its brief, Century contends on appeal that the Supreme Court erred in dismissing its breach of contract or warranty cause of action as well as its claims regarding fraud. While that portion of the third cause of action alleging a breach of contract or warranty was properly dismissed, we modify the order to reinstate Century's fourth cause of action for fraud.

Century maintains that the Asbestos Representation Letter constituted a warranty in which Woolworth promised that the premises were virtually asbestos-free. Woolworth denies ever providing Century with a warranty. Instead it characterizes the letter as nothing more than a confirmation of Woolworth's limited knowledge and need for further testing to determine the full extent of asbestos on the premises.

Judge Learned Hand defined a warranty as "an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended precisely to relieve the promisee of any duty to ascertain the fact for himself; it amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue, for obviously the promisor cannot control what is already in the past." *(Metropolitan Coal Co. v Howard,* 155 F2d 780, 784; *see also, CBS Inc. v Ziff-Davis Publ. Co.,* 75 NY2d 496, 503.)

The Asbestos Representation Letter was not a warranty that the premises were virtually asbestos-free. The word "warranty" does not appear in any of the parties' agreements. Although during the negotiations, Century requested an express warranty from Woolworth regarding the absence of asbestos, Woolworth refused to accept Century's proposed modification of the sublease to avoid making any definitive promises.

Both the Testwell Craig report and the Landmark letter revealed the presence of asbestos in a substantial portion of the premises. The statements contained in the Asbestos Representation Letter cannot be characterized as a certification of fact that Woolworth intended to relieve Century of any duty to ascertain facts for itself *(Ainger v Michigan Gen. Corp.,* 476 F Supp 1209, *affd* 632 F2d 1025). The letter notified Century that additional surveying should be conducted to determine the exact levels of asbestos in the building and clearly indicated that Woolworth was unaware of the full extent of the asbestos at that time. Century bargained for nothing more

than a letter regarding Woolworth's knowledge and notice of hazardous substances. The letter complied with Woolworth's obligations under the parties' agreements.

Since the breach of contract/warranty cause of action was properly dismissed, Century is responsible for the removal of asbestos from the premises pursuant to the lease modification document in which it assumed the responsibility Woolworth would have had as tenant under the prime lease.

It was error, however, to dismiss the fourth cause of action for fraud, since questions of fact exist precluding the award of summary judgment. This cause of action is entirely independent of the contractual relation between the parties *(see, Channel Master Corp. v Aluminium Ltd. Sales,* 4 NY2d 403). The essential elements of an action for fraudulent inducement are the representation of a material existing fact, falsity, scienter, deception and injury *(supra).* A person " 'who fraudulently makes a misrepresentation of * * * intention * * * for the purpose of inducing another to act or refrain from action in reliance thereon in a business transaction' is liable for the harm caused by the other's justifiable reliance upon the misrepresentation." *(Supra,* at 407, quoting Restatement of Torts, § 525, at 59.)

Whether Century reasonably relied on the statements contained in the Asbestos Representation Letter should not have been resolved as a matter of law. If facts represented are not matters peculiarly within the knowledge of the individual making such representations, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or real quality of the subject of the representation, he must make use of those means or he will not be heard to complain that he was induced to enter into the transaction by misrepresentation *(Schumaker v Mather,* 133 NY 590).

The Supreme Court, relying on *Schumaker (supra),* dismissed the fraud cause of action on the basis of Century's failure to conduct an inspection of the premises. However, we conclude that questions of fact exist as to whether the extent of the asbestos in the premises was peculiarly within Woolworth's knowledge and as to whether Century could have determined the true condition of the premises through means of " 'ordinary intelligence' " *(Black v Chittenden,* 69 NY2d 665, 669). Century maintains that the extent of the asbestos was not detectable to the untrained eye nor through an ordinary site inspection. Nor could it have discovered the presence of asbestos through documents at its disposal *(cf.,*

*East End Owners Corp. v Roc-East End Assocs.,* 128 AD2d 366, *appeal withdrawn* 70 NY2d 952). Century claims it only received the floor plans for the premises from Woolworth after the closing and that Woolworth was the sole tenant prior to subletting to Century, which had no prior involvement with the building *(see, Black v Chittenden, supra).*

Accordingly, since questions of fact exist with regard to the cause of action alleging fraud, the order of the Supreme Court, entered October 1, 1990, is modified to reinstate this cause of action, and the order is otherwise affirmed. Concur—Rosenberger, J. P., Kupferman, Smith and Rubin, JJ.