*352 OPINION OF THE COURT
Kenneth R. Fisher, J.
On June 26, 2006, the court denied defendant’s preanswer motion to dismiss all claims exceeding the limitation of damages clause found in the asset sale agreement relating to plaintiffs purchase of two commercial loans having a principal balance of $3,233,087.49, extended to defendant’s borrower, CyTech Hardwoods, Inc. Plaintiff’s preanswer cross motion for summary judgment was denied without prejudice. After discovery, plaintiff renews the motion for summary judgment on the fourth cause of action, for rescission of the asset sale agreement, on the ground that defendant failed to comply with the requirement that it update, to the date of closing, all material documents in the defendant bank’s possession “pertaining to the loan(s)” extended by the bank to CyTech. (Asset sale agreement §§ 6.2, 6.2.4, 7.1, 7.2.) On the motion to dismiss, the court held that documentary evidence, in particular section 5 of the agreement in which plaintiff disclaimed reliance on anything provided by the bank prior to closing, did not relieve the bank from its duty under the agreement to provide to plaintiff material and relevant documents “pertaining to the loan(s)” up to and including the closing date.
Both on this motion and the prior one, defendant admits that it failed to provide a draft financial statement, dated August 31, 2005, which revealed that the value of collateral securing the two commercial loans in question, oak hardwood, had fallen by some $1.3 million due to adverse market pressures on that commodity over the previous nine months. After discovery, plaintiff establishes on this motion that defendant bank failed to disclose additional material facts pertaining to the loans in its possession: (1) information that CyTech wrote nearly $300,000 in worthless checks over a nine-day period in May 2005; (2) two “Non-Accrual Recommendation Forms” dated June 28, 2005, one for each of the two loans, in which defendant “move[d]” CyTech’s loans “to non-accrual status,” and in which the value of the collateral oak hardwood was “writt[en]-down” by more than $1.3 million, and which itself referred to CyTech’s “kiting [oí] checks” in late May 2005; and (3) bank documents evidencing the bank’s investigation of the check-kiting problem, including an e-mail inquiry to CyTech on May 12, notes of a telephone conversation with a CyTech representative, and a chart prepared by the bank listing the nearly $300,000 in checks allegedly “kited” between May 2-10, 2005. Plaintiff contends that *353 these documents should have been disclosed pursuant to the disclosure obligations of the asset sale agreement cited above.
A brief review of the mechanics for defendant bank’s sale of these two commercial loans provides needed perspective. Defendant hired the Debt Exchange, Inc. of Boston (DebtX) to run the bid procedures for the two loans. In a memorandum to potential bidders, entitled “Terms of Sale Memorandum,” DebtX invited bids according to its terms and the separate terms of the form asset sale agreement. The bids were to be closed September 23, 2005. The memorandum to bidders referenced the so-called “Investor Review Files” which were available at DebtX’s offices in Boston. The memorandum warned that bidders were responsible for their own due diligence and that “additions, deletions and changes to the Investor Review Files . . . may be available only online,” and that the bidder was “sole[ly] responsib[le] to check www.debtx.com for any such additions, deletions or changes.”
The memorandum to bidders also assured that the review files would “contain, to the extent in the possession of. . . [the] Seller, . . . borrower financials, relevant correspondence and any other material deemed germane to the valuation of the assets being offered.” Both the bank and DebtX disclaimed any warranty or representation “with respect to the accuracy or completeness of any information presented” in the review files, but, as observed in the court’s prior decision, there was an agreement in the memorandum to bidders as set forth above, and in the asset sale agreement, to keep the review file current through and including the date of closing. Indeed, the memorandum to bidders promised e-mail notification “of any additions or alterations to Investor Review Files,” but warned bidders to “check the website for updates just prior to bidding” in case of technical or other notification problems.
Significantly, the memorandum to bidders provided that “[b]y tendering a Bid, Bidder agrees that the Bid is irrevocable,” and further provides that “[a]ll Bids submitted must be unconditional.” By the terms of the memorandum and the asset sale agreement, bidders were told that the closing must be scheduled no later than seven calendar days after the award. The memorandum also warned bidders that “[w]hen endorsing the note to the successful Bidder, the transfer language will specifically state that the assignment is being made without recourse to the Seller.” The memorandum, in language consistent with the asset sale agreement, provided:
*354 “Neither Seller, DebtX nor any of their officers or employees make any representations or warranties, express or implied, in connection with assets being offered for sale. The assets are being sold ‘AS IS’ and ‘WITH ALL FAULTS.’ Neither Seller, DebtX, nor any of their officers or employees make any representations or warranties with respect to the validity or enforceability of the assets or the completeness or accuracy of any information provided by Seller to DebtX with respect to any asset.”
There is no question but that all parties recognized the transaction as a distressed loan sale involving a debtor in significant financial trouble. Defendant and DebtX also provided an “Asset Summary Report” disclosing that the loans were “nonperforming,” were “cross-collateralized and cross-defaulted,” that CyTech was “experiencing weakened cash flow as a result of an industry-wide downturn,” and that “[ejarlier this year, the price of oak dropped significantly which had a material negative impact on the borrower’s profitability . . . [in part because] [t]he borrower had a significant amount of oak material in inventory,” well above prevalent industry inventory turnover ratios. Plaintiffs bid of $2,604,047 (or 80% of the total balance due) was nearly twice that of the next highest bidder, and the other bidders all ranged between 38% to 42% of the balance due.
Not surprisingly, plaintiffs offer was accepted on the same day as the September 23 deadline for submission of bids, thus triggering all of the terms of the asset sale agreement. Closing took place on September 29, 2005. Thereafter, CyTech ceased making payments on the loans, the personal guarantor of the loans filed for bankruptcy protection within three weeks of closing, and plaintiff became aware of defendant’s possession, on the closing date, of the August 31 draft financial statement. The lawsuit was commenced, alleging four causes of action: (1) breach of the asset sale agreement in regard to the contents of the review files; (2) breach of warranty; (3) breach of an implied covenant of good faith and fair dealing; and (4) equitable relief in the nature of rescission of the asset sale agreement. Plaintiffs motion for summary judgment is directed to the remedy of rescission only, although such a motion presupposes an established breach of contract/warranty, and it further seeks leave to amend the complaint to add a cause of action for fraud in the inducement.
*355 Discussion
Defendant does not dispute its failure timely to place the various documents in the review file, but it vigorously disputes the significance of the omissions in the context of this inherently risky distressed commercial loan auction/sale between sophisticated investor entities. Concerning the August 31 draft financial statement, defendant points out (without contradiction) that it came into the bank’s possession during the brief period between acceptance of plaintiffs bid on September 23 and the closing on September 29, and contends that the omission to include it in the review file cannot be important because it was “completely unreliable” on the subject of inventory valuation and because plaintiff could not have possibly acted differently even if it had bothered to check the Web site and discovered it between bid acceptance and closing. Concerning the check-kiting documents proved to be in defendant’s possession well prior to submission of the bid, defendant contends that the check kiting by CyTech was “unconfirmed” and that there was, in any event, no requirement that its documents evidencing possible check kiting be included in the review files. Defendant also contends that the check-kiting documents only are duplicative of other information in the file establishing that CyTech was suffering from cash flow difficulties.
The August 31 Draft Financial Statement
For the reasons stated in the court’s prior decision, the reliability or unreliability of the August 31 draft financial statement revealing devaluation of CyTech’s inventory by some $1 million is beside the point for purposes of determining whether the asset sale agreement was breached. The duties imposed on the bank by that agreement relate not to the reliability of information in its possession, but rather to a naked duty to disclose information in its possession regardless of quality. As plaintiff contends, defendant’s duty of disclosure has not insignificant consequences for plaintiffs obligation under the agreement to conduct whatever analysis it can of the reliability of the information in the review files, which is the only substitute available to a bidder for a due diligence process that, under the terms of this distressed loan auction, it cannot perform. Defendant’s expert underscores that “[tjhe process of purchasing a loan portfolio from a bank is very dissimilar to the purchase of a business or the purchase of assets [,]” largely because “bidders are not permitted to inspect the borrower’s assets or property” nor will bidders be “afforded an opportunity to conduct due diligence and conduct appraisals and audits.”
*356 Moreover, as plaintiff contends, the provisions in the asset sale agreement did not restrict the bank’s duty of disclosure to only audited or verifiable financials, or to only nonredundant documentation of CyTech’s financial troubles. The point is that plaintiff did not purchase any warranty that the materials contained in the review files were reliable, trustworthy, in final form, audited, verifiable, or even nonredundant. Instead, plaintiff purchased a warranty that defendant would include in the review file all qualified or defined material in its possession pertaining to the loans. This duty to update the review file with documents coming into the bank’s possession continued through the time of closing. (Asset sale agreement § 7.1 [“prior to the Closing Date”]; § 7.2 [“as of the Closing Date”]; see also, id. §§ 6.2, 6.2.4; appendix A.)
The contractual duty to maintain the review file was “an assurance by one party to a contract of the existence of a fact upon which the other party may rely.” (Metropolitan Coal Co. v Howard, 155 F2d 780, 784 [2d Cir 1946, L. Hand, JJ.) “It warranted] a past or existing condition rather than committing to some future action and is thus more precisely described as a warranty than as a promise.” (All-Tech Telecom, Inc. v Amway Corp., 174 F3d 862, 868-869 [7th Cir 1999, Posner, J.], citing L.S. Heath & Son, Inc. v AT & TInfo. Sys., Inc., 9 F3d 561, 570 [7th Cir 1993]; Metropolitan Coal Co. v Howard, 155 F2d at 784; Restatement [Second] of Contracts § 2, Comment d [1981]; Oliver Wendell Holmes, Jr., The Common Law, at 298-301 [1881].) The provision was
“intended precisely to relieve the promisee of any duty to ascertain the fact [i.e., in this context defendant’s knowledge of and possession of documents pertaining to the loans] for himself; it amounted] to a promise to indemnify the promisee for any loss if the fact warranted [i.e., that the review file would be updated and complete through the closing] proves untrue ... To argue that the promisee is responsible for failing independently to confirm [the satisfactory performance of the warranty], is utterly to misconceive its office.” (Metropolitan Coal Co. v Howard, 155 F2d at 784.)
“Thus, a claim for relief in breach of warranty is complete upon proof of the warranty as part of a contract and proof of its breach.” (Ainger v Michigan Gen. Corp., 476 F Supp 1209, 1225 [SD NY 1979], affd on other grounds 632 F2d 1025 [2d Cir 1980]; see CBS Inc. v Ziff-Davis Publ. Co., 75 NY2d 496, 505- *357 506 [1990] [same]; Century 21 v Woolworth Co., 181 AD2d 620, 624-625 [1st Dept 1992].) In other words, plaintiff contracted to buy CyTech’s loans in exchange for, among other things, defendant’s reciprocal promise to include in the review files all defined documents pertinent to the loans in its possession prior to closing, documents it could then use during the substituted “due diligence” it was responsible for. “A warranty is a kind of insurance, entitling the beneficiary of the warranty to be held harmless against the event insured against,” in this case defendant’s failure to include documents pertinent and material to the loans. (Vigortone AG Prods., Inc. v PM AG Prods., Inc., 316 F3d 641, 648 [7th Cir 2002, Posner, J.].) The warranty as to the contents of the review file “survived” closing under section 16 of the agreement (CBS Inc. v Ziff-Davis Publ. Co., 75 NY2d at 505), at least for the periods identified in section 20, although the parties dispute whether the warranty relative to the review file can ever expire.
More troubling for plaintiff, however, is defendant’s contention that, once the bid was accepted, it was irrevocable notwithstanding defendant’s continuing duty to update the review file with documents coming into its possession prior to closing. Defendant contends that plaintiff had no right to rescind its bid or void the asset sale agreement (which became effective upon acceptance of plaintiffs bid) even if defendant had included the August 31 draft financial statement prior to closing. Whether this is only a merely plausible reading of the terms of sale memorandum, in view of the lack of any reference in the quoted subparagraph of the terms of sale memorandum to a “closing” (see terms of sale mem ¶ [d] [“By tendering a Bid, Bidder agrees that the Bid is irrevocable . . . All Bids submitted must be unconditional”]), need not be decided. Defendant’s view of irrevocability simply is not a plausible reading of the agreement as a whole, which required that any conflict as between the terms of sale memorandum and the asset sale agreement be resolved in favor of the terms contained in the latter. Section 7 of the asset sale agreement, entitled “Conditions Precedent to Closing,” prescribed that plaintiffs obligation to close (i.e., “to complete the purchase and sale”) was “subject to the fulfillment on or prior to Closing Date of each of the following additional conditions,” which included the warranty of the bank in respect to updating the review files “at or as of the Closing Date.” Thus, plaintiff bargained, as set forth above, for the truth of the bank’s warranty that it would keep the review files *358 current between the date of acceptance of the bid and the closing, something that on this undisputed record the bank failed to do. Defendant’s interpretation of the terms of sale memorandum to impose an immutable rule of bid irrevocability would render section 7 of the asset sale agreement meaningless, i.e., as having no possible application. Such an interpretation must be avoided. (Lawyers’ Fund for Client Protection of State of N.Y. v Bank Leumi Trust Co. of N.Y., 94 NY2d 398, 404 [2000]; Matter of Columbus Park Corp. v Department of Hous. Preserv. & Dev. of City of N.Y., 80 NY2d 19, 31 [1992] [“a construction which makes a contract provision meaningless is contrary to basic principles of contract interpretation”].)
This conclusion can only be reinforced by the choice of title of section 7. While “a contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition” (Unigard Sec. Ins. Co. o North Rio. Ins. Co., 79 NY2d 576, 581 [1992]), where the language of the contract makes it “ ‘unmistakably]’ ” clear that a condition precedent was intended, literal observance is required. (Oppenheimer & Co. o Oppenheim, Appel, Dixon & Co., 86 NY2d 685, 691 [1995], quoting Restatement [Second] of Contracts § 229, Comment a, at 185.) In this case, the language chosen is virtually indistinguishable from that in Merritt Hill Vineyards o Windy Hgts. Vineyard (61 NY2d 106, 112-113 [1984] [title of contract provision in question was “Conditions Precedent to Purchaser’s Obligation to Close,” and the provision stated that “obligation to pay the purchase price and complete the purchase of the vineyard is ‘subject to’ fulfillment of those requirements”]). Accordingly, defendant’s theory that the bid for all purposes was irrevocable cannot be sustained.
Therefore, on this one element of plaintiffs rescission claim, breach of the agreement/warranty, it establishes as a matter of law that one occurred, and defendant fails to raise any issue of fact warranting a trial thereof. But that is only the beginning. On a claim for rescission, the breach must be shown to have substantially defeated the expectation of the parties to the bargain. Moreover, in the event of a nonfulfillment or nonoccurrence of a condition precedent thereby excusing all performance by the plaintiff, the question remains whether defendant raises an issue of fact whether such “nonoccurrence of [a] condition may yet be excused by . . . forfeiture,” a doctrine which holds that “ ‘[t]o the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the *359 non-occurrence of that condition unless its occurrence was a material part of the agreed exchange.’ ” (86 NY2d at 691, quoting Restatement [Second] of Contracts § 229.) This is not a question of substantial performance of the condition precedent which, it was held in Oppenheimer, “is not sufficient” to satisfy the condition; defendant is thereby relegating to relief, if at all “ ‘under the contract, [solely] through excuse of the nonoccurrence of the condition to avoid forfeiture.’ ” (86 NY2d at 692, quoting Brown-Marx Assoc., Ltd. v Emigrant Sav. Bank, 703 F2d 1361, 1367-1368 [1983].) The parties have briefed the matter almost entirely as a question of material breach for rescission. But it is clear that both must be addressed. It is to these issues that the court now turns.
Viewed as a Breach of Warranty
It has gone unchallenged on the prior motion to dismiss, and, on this motion, that defendant received the August 31 draft financial statement at about 5:00 p.m. on September 26. The bid was accepted on September 23, thus triggering the effective date of the form asset sale agreement (subject to minor adjustments — terms of sale mem ¶ 1 [d] [preamble] [“final form of the Asset Sale Agreement is not expected to differ significantly from the draft”]). Those minor adjustments remained the subject of negotiation through 5:12 p.m. on September 26 when DebtX sent plaintiff a red-lined version of the asset sale agreement. Final acceptance of the red-lined version — hence the closing — occurred at 5:45 p.m. that day. Given this time line, the extent of other disclosure by defendant of the declining market for oak, the terms of the contractual documents at issue and in particular the persistent disclaimers throughout, and plaintiffs status as a sophisticated commercial enterprise, plaintiff faces a daunting task in establishing the materiality of the breach of warranty sufficient to support rescission. (Siemens Solar Indus. v Atlantic Richfield Co., 251 AD2d 82 [1st Dept 1998].)
The situation would be different if the parties’ agreement required defendant to warrant the truth of the documents in the review files, but this agreement did not. It only required defendant to warrant that the defined documents would be included. Furthermore, the warranty referred to documents qualified for inclusion in the review files both genetically and in particular, but reference to a draft financial statement prepared by a third party is “nowhere mentioned]” (251 AD2d at 82) in the asset sale agreement (appendix A), which is the controlling document in the event of any conflict between it and the terms *360 of sale memorandum, which was more expansive. In the case of a warranty of this limited kind, the materiality of the breach must be assessed in the context of the actual disclosure made to determine the extent, if any, of duplication as between the August 31 draft financial statement and the review file as it existed. The omission to include it would have dramatically different consequences if defendant warranted the truth of what was already in the review file, including the much higher valuations of inventory in earlier years. (See CBS Inc. v Ziff-Davis Publ. Co., 75 NY2d at 506 [even if “CBS questioned the truth of the facts warranted (a holding that Ziff-Davis should be absolved thereby from its warranty obligations) would have the effect of depriving the express warranties of their only value to CBS— i.e., as continuing promises by Ziff-Davis to indemnify CBS if the facts warranted proved to be untrue”].)
True it is that the value of the oak hardwood collateral was central to the transaction, but plaintiff’s argument that the precise amount of drop in value revealed by the August 31 draft was material is seriously impaired by the persistent disclaimers throughout the contract documents that plaintiff should not rely on the veracity of anything in the review files, plaintiffs obligation under the agreement to conduct its own detailed analysis of the market for the collateral, and the disclosure actually afforded by the review file and other contract documents showing that CyTech’s primary collateral for the loans was an excess of inventory of oak hardwood the value of which recently suffered by reason of a market downturn. In other words, and following the formula of CBS Inc. v Ziff-Davis Publ. Co. (supra), on the nature of defendant’s breach of contract/ warranty, the question is only whether the failure to include the August 31 draft in the review file between the time of receipt thereof at 5:00 p.m. on the 26th and the closing at 5:45 p.m. can possibly, in the full context of the contract documents and the peculiar nature of the transaction, together with the disclaimers made, be a material breach of the agreement “so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract.” (Callanan v Keeseville, Ausable Chasm & Lake Champlain R.R. Co., 199 NY 268, 284 [1910]; see RR Chester, LLC v Arlington Bldg. Corp., 22 AD3d 652, 654 [2d Dept 2005] [“considering all of the circumstances of this case, including the disproportionally small amount” of the breach] [emphasis supplied]; Lenel Sys. Intl., Inc. v Smith, 34 AD3d 1284 [4th Dept 2006] [upholding denial of summary judgment on the rescission claim].)
*361 Whatever value to plaintiff lay in the bank’s obligation to keep the review files current between bid acceptance and closing, it was assuredly not that the bank agreed to indemnify plaintiff concerning the truth or reliability of the inventory valuations already in the review files. The balance of the contract documents wholly precluded such a view, and placed sole responsibility for collateral valuation and all analysis of the files’ contents, including making a determination of the current market for oak hardwood, on the plaintiff. Plaintiff has not articulated what value, in this context, defendant’s warranty as to the completeness of the review file had to it, other than that such items as were included aided it in its own responsibilities to assess the risk of the loans. In this discussion, however, plaintiff often strays into concepts of collateral valuation reliance, or reliability of file contents, which is not a cognizable interest under the unambiguous terms of this agreement.
Unlike in CBS Inc. v Ziff-Davis Publ. Co. (supra), plaintiff was not purchasing the bank’s promise as to the truth of the information contained in the review files (75 NY2d at 503, quoting Ainger v Michigan Gen. Corp., 476 F Supp at 1225, supra), but was only purchasing the bank’s promise that it did not have anything else in its possession pertaining to the loans. The value of this to plaintiff is of a qualitatively much different order than a seller’s promise as to the truth of the material contained in the file. And that value, whatever it is, must be assessed in the context of the buyer’s obligation under the agreement to independently assess collateral inventory valuation in the declining market the contract documents clearly announced was then current.[1] To the extent plaintiff meets its initial burden to show entitlement to judgment on this issue as a matter of law, and I find to the contrary that it has not, defendant raises triable issues of fact “whether that breach was so *362 substantial that it defeated the object of the parties in making the contracts.” (Lenel Sys., 34 AD3d at 1285, supra.)[2]
Finally, on the rescission issue plaintiff presents, plaintiff has not identified whether it is suing for rescission in equity or for rescission at law. (See generally, Motor Veh. Mfrs. Assn. of U.S. v State of New York, 75 NY2d 175, 182-183 [1990].) In reply, for example, plaintiff points to section 20 of the agreement which, it contends, provides for rescission. For the reason stated infra, the section 20 remedy referred to does not apply to this preclosing breach. But plaintiff’s reference to it calls into doubt whether it is seeking the equitable remedy of rescission or whether instead it is suing on the contract for a remedy provided therein. There is a substantial question whether rescission in equity is available for a mere breach of warranty of an executed contract in the absence of a statute providing for the same or a provision in the contract preserving the right. (Rosenwasser v Blyn Shoes, Inc., 246 NY 340, 344-345 [1927]; Voorhees v Earl, 2 Hill 288 [1842]; Chrysler Fin. Corp. v DeLuca, 256 AD2d 886, 887-888 [3d Dept 1998].) Denial of summary judgment on the rescission issue may be made for the reasons articulated above, however, and does not depend upon a resolution of this unsettled question (26 Richard A. Lord, Williston on Contracts § 68:17 [4th ed]; cf., Scriven v Hecht, 287 F 853, 856 [2d Cir 1923]), which in any event may be rendered academic if the case ultimately is decided under the rubric of nonoccurrence of a condition precedent.
Viewed as a Nonoccurrence of a Condition Precedent
Although plaintiff does not explore it in so many words, its strongest claim to summary judgment is on the theory that it may undo the transaction because of the nonoccurrence of a condition precedent to closing, i.e., a proper update of the review files as required by section 7.2 of the asset sale agreement. As stated above, section 7 provides in unmistakable terms for a condition precedent to closing that defendant’s warranties are kept current through the closing. (Merritt Hill Vineyards v *363 Windy Hgts. Vineyard, 61 NY2d at 112-113.) Plaintiff therefore establishes as a matter of law the existence of the condition and its nonoccurrence. Although the case of Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co. (86 NY2d 685 [1995]) establishes that the doctrine of substantial performance is not applicable (86 NY2d at 692), the doctrine of forfeiture is on these facts clearly invoked.[3] First, if the nonoccurrence of the condition is not excused, defendant will “ Tos[e] [its] right to the agreed exchange after [it] has relied substantially, as by preparation or performance on the expectation of that exchange.’ ” (86 NY2d at 692 n 2, quoting Restatement [Second] of Contracts § 229, Comment b.) Second, defendant unquestionably conferred a benefit on plaintiff when it delivered the loans it sold together with an assignment to plaintiff of the collateral. (Compare 86 NY2d at 692 [“undisputed” that party seeking to avoid nonoccurrence of condition “has not. . . conferred a benefit upon defendant”]; 86 NY2d at 694 [avoidance of forfeiture rationale presupposes that the party seeking to avoid it has conferred a benefit upon the other party].) Third, “ ‘a court may excuse the non-occurrence of th[e] condition unless its occurrence was a material part of the agreed exchange.’ ” (Id., 86 NY2d at 691, quoting Restatement [Second] of Contracts § 229.)
On this latter aspect, defendant raises an issue of fact also. Because the condition was stated in the controlling document, the asset sale agreement (appendix A), in generic terms, and not with the specificity of a concrete event which would trigger plaintiffs duty of performance, it is appropriate to consider the materiality question in the context of the broader question of the dynamic involved, and with respect to whether the “specific matter that is the subject of the alleged nondisclosure” (Siemens Solar Indus., supra at 82), here the August 31 draft report, is itself the material part of the exchange or whether it is merely a part of the broader context of disclosure concerning CyTech’s inventory valuation already in plaintiffs hands at the time of closing. The court believes that defendant at least raises an issue of fact whether, in the context of this sophisticated commercial transaction by seasoned parties, and in the context of substantial disclosure contained in the bid documents of *364 CyTech’s condition, including the recent declining market for its oak hardwood collateral, nonoccurrence of the condition precedent solely by virtue of the failure to include the very recently obtained draft report, less than an hour before the parties closed, “was a material part of the agreed exchange.” On this record, the question is one of fact for the factfinder. (Jacob & Youngs, Inc. v Kent, 230 NY 239, 243 [1921, Cardozo, J.]; see Sahadi v Continental III. Natl. Bank & Trust Co. of Chicago, 706 F2d 193, 199 [7th Cir 1983]; compare Oppenheimer, 86 NY2d at 695 [albeit on a substantial performance issue not present here and where the inferences are not conflicting].) For purposes of this aspect of plaintiffs motion for summary judgment, the inferences on these crucial questions are conflicting. Accordingly, on a theory of summary judgment rescinding the transaction by reason of the nonoccurrence of a condition precedent, plaintiff is still not entitled to a grant of its motion.[4]
Check-Kiting Materials
That leaves for consideration whether defendant’s failure to include in the review files material relating to CyTech’s alleged check kiting in May 2005 independently supports plaintiff’s claim on either a theory of rescission or failure of a condition precedent. Defendant contends that these materials were not even required to be included in the review file by the terms of the asset sale agreement, which excluded “any documents prepared by or for the use of Seller or DebtX regarding the valuation of the loan(s).” (Asset sale agreement, appendix A [definition of review file].) Plaintiff points to a provision of the terms of sale memorandum (111 [a]) which alerted potential bidders that the review files would contain “borrower financials, relevant correspondence and any other material deemed germane to the valuation of the assets being offered” (emphasis supplied). Even if plaintiff could escape the declaration in the terms of sale memorandum that, in the event of conflict, “the terms and provisions of the Asset Sale Agreement shall govern and control,” a dubious proposition at best, plaintiffs reference to the above-quoted language would only render the entire agreement, for purposes of its current motion for summary judg *365 ment, ambiguous on the subject thus requiring a trial. Defendant’s interpretation is a more than plausible reading of the contract, and therefore plaintiff fails to satisfy its initial burden on summary judgment to show that its interpretation “is the only construction that can fairly be placed on it.” (Sullivan v Troser Mgt., Inc., 34 AD3d 1233, 1235 [4th Dept 2006]; Chimart Assoc. v Paul, 66 NY2d 570, 573 [1986].) In any event, defendant raises a triable issue whether the alleged check-kiting correspondence, defendant’s chart thereof, and in particular the nonaccrual forms, all items created by the bank, concerned the bank’s valuation of the loans such that they were exempted from eligibility for inclusion in the review files by the terms of the asset sale agreement, appendix A.
That should be the end of the matter. But both parties, for differing reasons, invoke section 20 of the asset sale agreement, defendant to show that it cured the breach by providing to plaintiff the documents in question and plaintiff to show that the contract preserved to it a rescission remedy. First, as alluded to on the last page of the court’s prior decision, the section 20 formula (excepting the first sentence) is applicable to a breach of warranty occurring after closing. A number of the covered warranties in sections 6.1 and 6.2 may occur after closing. By contrast, the breach involved here occurred before closing. Moreover, defendant’s breach of its preclosing obligations to keep the review files current with covered documents coming into its possession is of an obligation the nonperformance of which cannot be cured, a fortiori because the closing has passed. Providing the documents within the time frames provided in section 20 does not cure the obligation to provide them prior to closing, which is the only time plaintiff could have exercised its rights not to close under section 7 (“Conditions Precedent to Closing”). Accordingly, defendant’s argument, drawn from section 20, is wholly without merit. Similarly, plaintiffs argument that the section 20 remedies preserve to it a rescission remedy is unavailing because the breach in question in this case did not occur “after” closing. To the extent the provisions of section 20 provide a “rescission” type remedy, they do so only in connection with postclosing breaches.
For all of the foregoing reasons, plaintiffs motion for summary judgment on its claim for rescission, whether on a theory of material breach of the agreement or for a failure of observance of a condition precedent, is denied.
Defendant refers to the section 16 declaration that “warranties set forth in Section 6.2 shall expire ninety days after the *366 closing date, after which time no claim for breach of seller’s representations or warranties may be made.” Defendant contends that this action was not commenced until 148 days after closing and, therefore, that it is time-barred. This point, which was not raised by defendant on the prior motion until submission of defense counsel’s surreply affirmation (June 20, 2006), is not the subject of any cross motion for summary judgment. Accordingly, by reason of the foregoing, it is unnecessary to reach the merits of this contention in order to deny plaintiffs motion. I would only note that plaintiff wrote to defendant on December 20, 2005, within the 90-day period, declaring defendant to be in default by reason of the failure to provide the August 31 draft financial statement, without speculating on the issue whether said letter was effective to “ma[k]e” a claim for breach of seller’s warranties under section 16.
The Motion to Amend
Left for consideration is defendant’s motion to amend for the purpose of adding a claim for fraud in the inducement. The parties, both of them, wholly misconceive the reliance interest at issue on this motion. The persistent disclaimers of reliance on the review file documents would serve to preclude reliance on anything actually found in the review files. But these disclaimers, relied on by defendant, do not address the only cognizable reliance claim plaintiff could make in this case, and that is that plaintiff relied on defendant’s representation that all defined documents in defendant’s possession pertaining to the loans were in the review file. Assuming that the nonaccrual forms and alleged check-kiting documents qualified for inclusion in the review files, as I must for purposes of this motion (the August 31 draft financial statement has already been found to qualify for inclusion), plaintiff nevertheless fails to point to any duty independent of the contract documents themselves as a basis for its amended claim. (Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 389 [1987].) While it is true that, under CBS Inc. v Ziff-Davis Publ. Co. (supra), reliance is not an element of plaintiffs breach of contract/warranty claim, the added fact of reliance, if present, cannot support plaintiffs proposed fraud-in-the-inducement claim without reference to such an independent duty.
Plaintiff emphasizes that defendant’s fraud occurred before execution of the asset sale agreement and that, therefore, “Pramco is not claiming that the bank fraudulently breached the Asset Sale Agreement[;] [r]ather, the fraud occurred *367 beforehand.” (Plaintiffs reply mem at 12.) But this argument ignores the fact that the terms of sale memorandum, upon which plaintiff relies for this argument, was expressly made a part of the contract documents. Accordingly, the duty to disclose the documents referenced arose from the terms of the parties’ agreement only, thus bringing into play the Clark-Fitzpatrick rule. Contrary to plaintiffs arguments, drawn from Deerfield Communications Corp. v Chesebrough-Ponds, Inc. (68 NY2d 954 [1986]) and First Bank of Ams. v Motor Car Funding (257 AD2d 287 [1st Dept 1999]), plaintiff fails to refer to “a breach of duty separate from, or in addition to,” that created by the contract documents. (257 AD2d at 291.) By its very terms, the proposed fifth cause of action refers to a duty having its sole origin in the contract documents. Given the tenor of the transaction, a distressed loan sale at auction, and the terms of the contract, defendant had no other duty to supplement the review files other than the duty prescribed in the contract documents. According to the contract documents, defendant made no representation concerning the absence of check kiting or the absence of a reduction in the collateral inventory valuation. (Cf., J.A.O. Acquisition Corp. v Stavitsky, 8 NY3d 144 [2007].) That distinguishes defendant’s warranties here from those in First Bank (257 AD2d at 292 [“warranties certified that as of the date of sale to First Bank, any individual loan would comply with certain underwriting guidelines”]). Accordingly, the only duty at issue sprang from the contract documents themselves.
The motion to amend is denied.

. By contrast, in a case in which the warranty is of the truth of the material disclosed and a breach is discovered prior to closing (unlike in this case), such an assessment of breach in light of what plaintiff learned on its own before closing would be inappropriate under the federal cases interpreting New York law (Rogath v Siebenmann, 129 F3d 261, 266 [2d Cir 1997]; Galli v Metz, 973 F2d 145, 151 [2d Cir 1992]), although a waiver may he inferred if defendant discloses the nontruth and plaintiff closes anyway without a reservation of rights. Because plaintiff did not learn of the breach until well after closing, these cases are inapposite even if they correctly state New York law after Ziff-Davis.

. Defendant also maintains that there was no breach of warranty in connection with the August 31 draft financial statement because, under section 6.2 of the asset sale agreement, the warranty of completeness of the review files to be “true and correct in all material respect(s) [was only] as of the date hereof’ (emphasis supplied), which was, according to the first page of the agreement, September 23, three days before the August 31 document came into its possession. For the reasons stated above in the text concerning those provisions of the agreement addressing the conditions precedent to closing, this contention is without merit. (Asset purchase agreement §§ 7, 7.2.)

. To be distinguished is the doctrine of “interpretative preference” to avoid forfeiture by preferring to find that a contractual provision of “doubtful” interpretation is a condition, a doctrine Oppenheimer eschews while at the same time holding that a condition “may yet be excused by . . . forfeiture.” (86 NY2d at 691; see National Fuel Gas Distrib. Corp. v Hartford Fire Ins. Co., 28 AD3d 1169, 1170 [4th Dept 2006].)

. This is not to say that the failure of fulfillment of the condition by defendant was not a breach of the contract. Unlike in Merritt Hill Vineyards v Windy Hgts. Vineyard (61 NY2d at 113), defendant was responsible for fulfillment of the condition and made an independent promise/warranty in the agreement to perform the condition. (Restatement [Second] of Contracts § 225 [3].)